## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**ANGELA RENEE BIDDLE**                                                                                            **PLAINTIFF**

**v.**                                          **Case No. 4:19-cv-00901-LPR**

**HOMES AT GRANITE MOUNTAIN,** *et al.*                                                **DEFENDANTS**

## <u>ORDER</u>

In this case, Plaintiff Angela Renee Biddle brings twelve claims against Defendants related to the federally subsidized housing where she used to live.  She alleges breach of the warranty of habitability, violation of due process, negligence and gross negligence, constructive eviction, wrongful eviction, breach of contract, failure to pay rental reimbursement, failure to return security deposit, conversion, emotional distress, pain and suffering, and fraud and misrepresentation.[1]

Pending before the Court is a Motion for Summary Judgment by separate Defendants Homes at Granite Mountain ("HGM" or "HAGM") and Ledic Management Group, LLC ("Ledic").[2]  Unlike most summary judgment motions, this one has been filed very early on in the case, prior to discovery.  HGM and Ledic believe "no discovery is needed on the issues raised in the motion" and that "[e]arly disposition of plaintiff's claims against [them] will be an efficient use of the Court's and the parties' time, efforts, and resources."[3]  HGM and Ledic "reserve the right to file subsequent motions for summary judgment in the event that the present motion is not granted."[4]  For the reasons discussed below, the Court GRANTS in part and DENIES in part the

---

[1]   Pl.'s Compl. (Doc. 2).

[2]   Defs.' Mot. for Summ. J. (Doc. 17).  Ms. Biddle is also suing the Housing Authority of the City of Little Rock ("LRHA.")  Pl.'s Compl. (Doc. 2).  The LRHA has not moved for summary judgment.

[3]   Defs.' Mot. for Summ. J. (Doc. 17) at 2 n. 1.

[4]   *Id.*

Motion.

## Background

During the time frame relevant in this Complaint, Ms. Biddle and her three minor children lived in a federally subsidized apartment located at 6A Sabbs Circle, Little Rock, Arkansas 72206.[5] "Ms. Biddle's apartment was located in a public housing complex then owned and operated (but not built) by LRHA" and "commonly known as Homes at Granite Mountain."[6]  Ledic, a property management company, managed the Homes at Granite Mountain complex.[7]  It had done so since 2012.[8]

Among other things, Ms. Biddle's Complaint alleges a significant plumbing and mold problem in her 6A apartment, and the refusal of Defendants to fix the problem or move Ms. Biddle into another unit.  Specifically, on this front, she alleges as follows:

- She moved into the 6A apartment in 2012.[9]

- "Sometime in 2014," she "began to experience [an] issue with the . . . plumbing in her unit."[10]  "She started to notice a black, tarry, oily, substance" in various areas of the unit, including the dishwasher, toilets, bathroom sink, bathroom tubs, and kitchen faucet.[11]

- "At one point, the substance ate through a steel pipe . . . ."[12]  She also found "a heavy black residue" inside the kitchen faucet.[13]  "She made several calls, sent several letters, [and] met with the Defendants on countless instances regarding the health and safety of the unit."[14]

---

[5]   Pl.'s Statement of Material Facts (Doc. 31) ¶ 1; Defs.' Statement of Material Facts (Doc. 20) ¶ 1; Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2) at 1; Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-3) at 13; Ex. D to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-4).

[6]   Aff. of Jada Johnson (Doc. 19) at 2.

[7]   Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-1) ¶ 2.

[8]   Pl.'s Compl. (Doc. 2) at 2; Answer by Ledic (Doc. 16) ¶ 7 (admitting to this allegation).

[9]   Pl.'s Compl. (Doc. 2) at 2.

[10]   *Id.*

[11]   *Id.*

[12]   *Id.*

[13]   *Id.*

[14]   *Id.*

- "Eventually," LRHA "agreed something needed to be done and agreed to move the plaintiff."[15] LRHA "offered [her] the next available 3-bedroom unit," but "this offer was retracted as no units were available and several property managers expressed concern over bypassing existing waiting list participants."[16]

- Ms. Biddle was offered an apartment in Sunset Terrace Apartments, but she declined, characterizing the Apartments as "crime ridden, dilapidated, [and] pest infested . . . ."[17]

- The results of a June 2015 test by the Arkansas Department of Health Quality Division "indicated there was a plumbing issue within the structure" and "that it [was] likely that [the] substance in the plumbing [was] causing the lack of chlorine because [it was] absorbing [it] or using it up."[18]

- "On November 19, 2015," Ms. Biddle "notified HAGM of her decision to abate rent for the leased premises."[19]

- The results of a February 2016 test by the Arkansas Department of Health Quality Division showed the unit "tested positive for e-coli."[20]  Although the test did not show other problems, that is because the test was performed on an "exterior faucet of the unit" and "[s]pecimen collection at this access point was improper" because "the issue occurred within the unit's interior plumbing."[21]

- In March of 2016, Ms. Biddle was offered another unit in the HGM apartments, but she declined because it was a handicap unit; she had been advised that it "would only be temporary because if another disabled resident needed the unit, she would have to move" again.[22]  Additionally, "the unit's under sink pipes were exposed," which would have "pose[d] a safety risk for [Ms. Biddle's] toddler . . . ."[23]

- Finally, Ms. Biddle was offered "one last unit," but it "was given away to another resident without [Ms. Biddle] making a decision to accept or reject the unit."[24]

- In March of 2016, Ms. Biddle submitted "two separate water samples to Atoka Laboratory to identify [the] substance appearing in the unit's incoming water plumbing . . . ."[25]  They

---

[15]   *Id.*

[16]   *Id.*

[17]   *Id.*

[18]   *Id.* at 3.

[19]   *Id.*

[20]   *Id.* at 4.

[21]   *Id.*

[22]   *Id.* at 3.

[23]   *Id.*

[24]   *Id.*

[25]   *Id.* at 4.

were both positive for "heavy growth (4+) of Cladosporium."[26]

- Ms. Biddle asked, "on numerous occasions," for the Defendants "to identify the substance."[27]  "With the Defendant's refusal to do anything," Ms. Biddle "paid for a series of tests to test the water quality and identify the substance."[28]

- Defendants "were aware of the severe [p]lumbing issues and refused to fix [them] due to cost."[29]

The Court does not know what agreements governed Ms. Biddle's use of the 6A apartment prior to the fall of 2014.  However, in the fall of 2014, Ms. Biddle signed two agreements purporting to govern her use of the apartment going forward.  There was an "Apartment Lease" that was "made . . . between Homes at Granite Mountain . . . and Angela Biddle . . . ."[30]  This agreement was dated August 9, 2014 and was signed by the parties on November 6, 2014.[31]  There was also a "Residential Lease Agreement" made "between the Little Rock Housing Authority . . . and Tenant . . . ."[32]  This agreement was signed on November 6, 2014, the same date as the Apartment Lease was signed.[33]

In July of 2016, Ledic filed a "Complaint in Unlawful Detainer" against Ms. Biddle.[34]  In the Complaint, Ledic stated that it was acting as an "authorized agent of Homes at Granite Mountain . . . and the Little Rock Housing Authority . . . ."[35]  In a "Supporting Affidavit of

---

[26] *Id.*

[27] *Id.* at 3.

[28] *Id.*

[29] *Id.* at 4.

[30] Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2) at 1.

[31] *Id.* at 1, 6.

[32] Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-3) at 1.

[33] *Id.* at 15.  Ms. Jada Johnson, the Procurement and Capital Funds Coordinator for the Little Rock Housing Authority, submitted an affidavit referring to the Residential Lease Agreement as "the last lease agreement with LRHA signed by Ms. Biddle."  Aff. of Jada Johnson (Doc. 19) at 1.

[34] Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1).

[35] *Id.* at 2.

Eviction," Ms. Nedra Clayton, Community Manager for Ledic, specifically referenced both the agreement between LRHA and Ms. Biddle and the agreement between HGM and Ms. Biddle.[36] Her affidavit stated:

- "On or around November 6, 2014, Defendant executed and entered into a Lease Agreement ('HGM Lease') with HGM pursuant to which HGM leased to Defendant and Defendant leased from HGM certain premises bearing a street address of 6 Sabbs Circle, Apartment A, Little Rock, Arkansas 72206 (the 'Property')."[37]

- "On or around November 6, 2014, Defendant executed and entered into a separate Lease Agreement ('PHA Lease') with PHA pursuant to which PHA leased to Defendant and Defendant leased from PHA certain premises bearing a street address of 6 Sabbs Circle, Apartment A, Little Rock, Arkansas 72206 (the 'Property')."[38]

- "Defendant is required to annually provide certain documentation necessary for renewal and recertification as a resident in Public Housing.  Defendant failed to timely provide the information due on or around August 1, 2015 as required by Paragraph 12 of the HGM Lease and Paragraph VII of the PHA Lease.  Additionally, Defendant failed to report when she began receiving additional child support payments in February 2015, which are required to be reported within 10 days of the increase in her income as required by Paragraph VIII (3)(a) of the PHA Lease."[39]

- "On or around October 2, 2015, LEDIC notified Defendant of an increase in her rent payments due based on an increase in Defendant's income.  LEDIC also notified Defendant that the increase was retroactive based on Defendant's failure to report an increase in income dating back to March 2015."[40]

- "Despite these notifications, Defendant has failed to pay any rent payments, including rent payments due for March 2015 through the date of this affidavit.  At the current time, Defendant is currently indebted to LEDIC for rent arrearages in the amount of $2,530."[41]

- "Defendant requested a grievance hearing to dispute the amount of rent owed, but the Defendant cancelled the scheduled grievance hearing."[42]

- "On or about July 11, 2016, LEDIC personally served on Defendant a three (3) day notice to vacate by process server.  As of this date, Defendant has refused to vacate the

---

[36]   Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-1) ¶¶ 3-4.

[37]   *Id.* ¶ 3.

[38]   *Id.* ¶ 4.

[39]   *Id.* ¶ 5.

[40]   *Id.* ¶ 6.

[41]   *Id.* ¶ 7.

[42]   *Id.* ¶ 8.

premises."[43]

- "As a result of the Defendant's failure to pay monthly rent and failure to comply with the terms of the Leases, LEDIC is lawfully entitled to possession of 6 Sabbs Circle, Apartment A, Little Rock, Arkansas 72206."[44]

Ledic incorporated these facts into its Complaint in Unlawful Detainer and alleged that Ms. Biddle was in violation of numerous provisions of both her agreement with HGM and her agreement with LRHA.[45]   Ledic claimed that Ms. Biddle was in default under both agreements, and sought remedies based on both agreements.[46]

The Court has not been told how or if the unlawful detainer action was ever resolved. However, Ms. Biddle no longer lives at HGM.   In her Complaint in the case at bar, she alleges:

- "[I]n September of 2016," Ms. Biddle "was accepted into the Fort Worth Housing Solutions . . . HCV [P]rogram and was given a HCV to locate a unit."[47]

- "Around late September, [she] located a unit, that was subsequently approved by [the Program]."[48]

- "On November 16, 2016, [she] submitted to the defendant's agent Tracy Smith a 30-day notice at 12:05 p.m."[49]

While the Complaint alleges that the thirty-day notice was submitted on November 16, 2016, the record reflects that the date of the submission in question was November 14, 2016.  It was on that date that Ms. Biddle delivered a letter titled "30 Day Notice" to "Tracy Smith" at "12:05 pm."[50] The letter stated: "I, Angela R. Biddle, hereby give notice to Homes at Granite Mountain that I will be vacating the unit located at 6 Sabbs Circle Apt A Little Rock, AR 72206 within 30 days

---

[43]   *Id.* ¶ 9.

[44]   *Id.* ¶ 10.

[45]   Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1).

[46]   *Id.* ¶¶ 10-16.

[47]   Pl.'s Compl. (Doc. 2) at 7.

[48]   *Id.*

[49]   *Id.*

[50]   Aff. of Jada Johnson (Doc. 19) at 2, 25.

from today's date."[51]  The letter says it was "hand delivered" on "November 14, 2016."[52]

On December 15, 2016, Ms. Biddle wrote a letter titled "Vacation of the Premises" addressed to HGM.[53]  She wrote that "[a]s of December 13, 2016" she had "vacated the premises at 6 Sabbs Circle Apt A."[54]  She "enclosed the 2 door keys to the unit . . . ."  She provided her new address in Fort Worth, Texas.[55]  This new Texas address also appears at the top of the letter in Ms. Biddle's letterhead.

## Legal Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[56]  Conversely, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[57]  Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment."[58]  The dispute of fact must be both genuine and material to prevent summary judgment.[59]  A genuine dispute of fact exists where a rational jury could decide the particular question of fact for either party.[60]  A material dispute of fact exists where the jury's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[61]

---

[51]  Aff. of Jada Johnson (Doc. 19) at 25.

[52]  *Id.*

[53]  Ex. D to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-4).

[54]  *Id.*

[55]  *Id.*

[56]  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing Fed. R. Civ. P. 56).

[57]  *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[58]  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

[59]  *Id.*

[60]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[61]  *Id.*

The moving party has the burden to show that (1) there is an absence of a genuine dispute of material fact on at least one essential element of the nonmoving party's case and (2) the absence means that a rational juror could not possibly find for the nonmoving party on that essential element of the nonmoving party's case.[62]  If the moving party meets that burden, the burden then shifts to the nonmoving party to show that there is a genuine dispute of material fact.[63]  The nonmoving party meets this burden by designating specific facts in affidavits, depositions, answers to interrogatories, admissions, or other record evidence that shows "there is a genuine issue for trial."[64]  The Court must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences.[65]  Accordingly, for purposes of the Motion here, the Court considers the most pro-plaintiff version of the record that a jury could rationally conclude occurred.

## Discussion

The two Defendants that have moved for summary judgment (HGM and Ledic) share several arguments in common.  Before addressing those shared arguments, the Court must address a threshold argument advanced by HGM.

### Is HGM a Legal Entity Capable of Being Sued?

HGM argues that it is "not a legal entity capable of being sued."[66]  The only "evidence" that HGM provides to support this argument is that "records of the Arkansas Secretary of State

---

[62]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[63]   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Torgerson*, 643 F.3d at 1042.

[64]   *Celotex Corp.*, 477 U.S. at 322-24.

[65]   *Pedersen v. Bio-Med. Applications of Min*n., 775 F.3d 1049, 1053 (8th Cir. 2015).

[66]   Defs.' Br. in Supp. of Mot. for Summ. J. (Doc. 18) at 2 n. 1.  *See also* HGM's Answer (Doc. 15) ¶¶ 4, 42, 43, 49; Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33) at 1.

show no legally organized entity with the name Homes at Granite Mountain."[67]  That's not enough. On this record, there is at least a genuine issue of disputed material fact as to whether HGM is a legal entity capable of being sued.

Consider the "Apartment Lease" agreement between HGM and Ms. Biddle.[68]  HGM is specifically named as the landlord in this agreement and specifically identified as a party to the contract.[69]  How is this possible if HGM were not a legal entity capable of being sued?  Consider further the 2016 Unlawful Detainer Action brought by Ledic against Ms. Biddle[70] and Ms. Clayton's affidavit in the Unlawful Detainer action.[71]  Ledic stated that Ledic is an "authorized agent for Homes at Granite Mountain" in addition to being an authorized agent of LRHA.[72]  Ledic also alleged that Ms. Biddle "executed and entered into a Lease Agreement . . . with HGM pursuant to which HGM leased [the apartment in question] to" Ms. Biddle.[73]  Again, this was separate from the discussion of the contract with LRHA.

There's more.  In the instant action HGM is represented by counsel.[74]  Counsel for HGM has taken specific actions on behalf of HGM, such as filing an Answer and the pending Motion for Summary Judgment on HGM's behalf.[75]  It is unclear how HGM could have hired counsel, and can instruct counsel on how to proceed, if HGM is not a legal entity capable of being sued.

As this case unfolds, evidence *may* come to light that clearly shows HGM is not a legal

---

[67]  Reply in Supp. of Mot. for Summ. J. (Doc. 33) at 3.

[68]  Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2).

[69]  *Id.* at 1.

[70]  Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1).

[71]  Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-1).

[72]  Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1) at 2.

[73]  *Id.* ¶ 5; Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-1) ¶ 3.

[74]  Notice of Appearance by Teresa M. Wineland on behalf of Homes at Granite Mountain and Ledic Management Group, LLC (Doc. 14).

[75]  HGM's Answer (Doc. 15); Defs.' Mot. for Summ. J. (Doc. 17).

entity capable of being sued.  But the current record does not justify a grant of summary judgment to HGM on this basis.

Are the Torts & Due Process Claims Time-Barred?

Ms. Biddle's Complaint alleges causes of action for the torts of negligence and gross negligence, emotional distress, conversion, fraud and misrepresentation, and for violations of due process.[76]  HGM and Ledic argue that each of these claims are barred by a three-year statute of limitations.[77]

HGM and Ledic are correct that the applicable limitations period for these claims is three years.[78]  In *Shelnutt v. Laird*, the Arkansas Supreme Court explained that "a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time."[79]  The Court also explained that "the statute of limitations begins to run when there is a complete and present cause of action."[80]

Ms. Biddle filed her Complaint on December 16, 2019.  Accordingly, as a general matter, the claims being addressed in this section are time-barred if they accrued prior to December 16, 2016.  HGM and Ledic have a strong argument that these claims all accrued prior to December 16, 2016.  That is because Ms. Biddle vacated her apartment before that date.  Recall that, on

---

[76]  Pl.'s Compl. (Doc. 2).

[77]  Defs.' Br. in Supp. of Mot. for Summ. J. (Doc. 18) at 4.

[78]  *See* ARK. CODE ANN. § 16-56-105; *Hutcherson v. Rutledge*, 2017 Ark. 359, at 5, 533 S.W.3d 77, 80 ("It has long been the law in this state that a three-year statute of limitations applies to all tort actions not otherwise limited by law."); *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 582, 66 S.W.3d 568, 579 (2002) (three-year statute of limitations applies to fraud and misrepresentation); *Morton v. City of Little Rock*, 934 F.2d 180, 182-83 (8th Cir. 1991) (Arkansas statute of limitations for due process claims is three years).  Ms. Biddle argues that Arkansas law provides for a five-year statute of limitation for contract disputes.  Pl.'s Br. in Opp'n of Defs.' Mot. for Summ. J. (Doc. 29) at 4.  This is true under Arkansas Code § 16-56-111(a).  And "Defendants do not disagree."  Reply in Supp. of Mot. for Summ. J. (Doc. 33) at 5.  But the five-year limitations period is applicable to Ms. Biddle's contract claims, not her tort claims and due process claims.

[79]  359 Ark. 516, 520, 199 S.W.3d 65, 67 (2004).

[80]  *Id.* at 520, 199 S.W.3d 67-68; *see also Hutcherson,* 2017 Ark. 359, at 4, 533 S.W.3d at 80 ("The statute of limitations begins to run when the injury occurs, not when it is discovered.").

November 14, 2016, Ms. Biddle delivered a letter titled "30 Day Notice" to Defendants' agent that stated: "I, Angela R. Biddle, hereby give notice to Homes at Granite Mountain that I will be vacating the unit located at 6 Sabbs Circle Apt A Little Rock, AR 72206 within 30 days from today's date."[81]  Recall further that on December 15, 2016, Ms. Biddle wrote a letter to HGM titled "Vacation of the Premises" that returned her apartment keys and stated: "As of December 13, 2016, I have vacated the premises at 6 Sabbs Circle Apt A."[82]

Ms. Biddle argues that "there are genuine issues of material fact as to when such claims accrued."[83]  But the Court does not agree.  There is no genuine factual dispute as to when Ms. Biddle provided her thirty-day notice (November 14, 2016), when she vacated the premises (December 13, 2016) and when she provided notice of vacating the premises (December 15, 2016). This is all clear from the documents in the record, and there is no testimony or other evidence that even purports to contradict the documentary record.[84]

Ms. Biddle's Complaint alleges that "[o]n at least three instances, the Defendants violated the plaintiff's right to due process."[85]  She does not ground this claim in the provisions of the two contracts.  Instead, she focuses specifically on purported violations of the Code of Federal Regulations.[86]  The alleged due process violations concern (1) a purported lack of notice for LRHA

---

[81]   Aff. of Jada Johnson (Doc. 19) at 2, 25.

[82]   Ex. D to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-4).

[83]   Pl.'s Br. in Opp'n of Defs.' Mot. for Summ. J. (Doc. 29) at 4.

[84]   To the extent Ms. Biddle argues that her thirty-day notice dated November 14, 2016 was invalid or not properly delivered, the Court finds that there is no evidence at all to support this argument.  To the extent Ms. Biddle argues that, under the agreement between HGM and Ms. Biddle, thirty-day notices of termination are not effective until the first day of the month following their submission, the argument is beside the point.  The thirty-day notice letter dated November 14, 2016 clearly shows Ms. Biddle's intent to vacate the premises on or before December 14, 2016.  Next, Ms. Biddle's letter dated December 15, 2016 clearly shows that she had vacated the premises on December 13, 2016.  There is no evidence that Ms. Biddle was charged rent for any days after December 13, 2016 or otherwise considered to have not vacated the premises as of December 13, 2016.

[85]   Pl.'s Compl. (Doc. 2) at 4.

[86]   *Id.* at 4-5.

grievance hearings, (2) purportedly improper procedures used at the LRHA hearings, and (3) a purported lack of notice and opportunity for a hearing prior to eviction proceedings like an Unlawful Detainer Complaint.[87]   The hearings at issue took place in December of 2015, May of 2016, and June of 2016 respectively.[88]   The Unlawful Detainer Complaint was filed in June of 2016.[89]   Due process violations are discrete events and each claim arose at the specific time of the alleged violation.   In any event, there is certainly no reason that the limitations period would begin *after* Ms. Biddle voluntarily left her apartment on December 13, 2016.   Ms. Biddle's due process claims are time-barred.

Ms. Biddle's claims for negligence and gross negligence focus on Defendants' purported breach of its "duty to the plaintiff" to "provide a decent, safe, and habitable unit."[90]   Ms. Biddle alleges this breach is based on "the refusal to fix" the plumbing and mold issues coupled with Defendants' refusal to relocate Ms. Biddle to a different unit.[91]   The plumbing issues arose in 2015. The ultimate refusal to do repair work or move her to another apartment became evident by March 2016.   March 2016 is likely the right time for the limitations clock to start.   But, even if one could somehow consider the continuous nature of the claimed wrong to start the limitations period later than March of 2016, it could not possibly start after Ms. Biddle made the decision to terminate her lease, provided notice, and physically left the apartment.   As a result, Ms. Biddle's negligence and gross negligence claims are time-barred.   So are her claims for emotional distress and pain and suffering, which are based entirely on her allegation that Defendant was "negligen[t] in

---

[87]   *Id.* at 4-6.

[88]   *Id.*

[89]   Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1).

[90]   Pl.'s Compl. (Doc. 2) at 6.

[91]   *Id.*

maintaining the premises."[92]

Ms. Biddle's fraud and misrepresentations claims are also out.  Ms. Biddle claims that her signature was forged on lease documents from 2012 by an employee of HGM or Ledic.[93]  She does not tell the Court when she first learned of the purported forgery.  This part of Ms. Biddle's fraud claim is time-barred, especially given that the case at bar deals with leases from 2014.  Next Ms. Biddle claims that, in August of 2016, "HAGM's maintenance employee entered the unit under the guise of a pre[-]inspection as a means to serve the plaintiff with the notice of unlawful detainer."[94]  This part of her fraud claim is time-barred too.  It's a discrete event of alleged misrepresentation, which Ms. Biddle knew about immediately.  The claim certainly could not have arisen after Ms. Biddle provided her thirty-day notice and left the premises.  Finally, Ms. Biddle alleges that several letters dated between February and June of 2016 "were either authored after the fact or authored and never delivered to the plaintiff . . . ."[95]  Ms. Biddle does not allege and there is certainly no evidence to support that the letters were authored after December 13, 2016.  This part of her fraud claim is time-barred.

Ms. Biddle claims that conversion occurred when HGM or Ledic did not return her security deposit.[96]  The agreement between HGM and Ms. Biddle states that "[r]eturn of [the security] deposit or any portion thereof shall be made within a reasonable time after the Resident has vacated the premises and an inspection of [the] same has been made by the Landlord."[97]  The agreement between LRHA and Ms. Biddle provides a sixty-day window after the tenant vacates the unit for

---

[92]   *Id.* at 10.

[93]   *Id.* at 11.

[94]   *Id.*

[95]   *Id.*

[96]   *Id.* at 10.

[97]   Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2) ¶ 21.

returning the security deposit.[98]  Given this, if the retention of the security deposit was wrongful, it did not become wrongful until some "reasonable time" passed after Ms. Biddle vacated her apartment in the middle of December 2016.  Accordingly, at least for purposes of summary judgment, this conversion claim arose sometime within the three-year period preceding the December 16, 2019 filing of the Complaint.  It is thus not time-barred.

Ms. Biddle alleges that HGM or Ledic committed conversion when they "failed to pay the plaintiff utility reimbursements due from 2014-2015."[99]  Ms. Biddle does not suggest when the failure to pay reimbursements from 2014-15 became wrongful (and thus in her view conversion).  But there is no evidence to suggest that the failure became wrongful only *after* she vacated the premises.  The reasonable inference is that any utility reimbursements from 2014 and 2015 became wrongfully withheld (if at all) back sometime in 2014 and 2015.  Indeed, another portion of her Complaint alleges that this issue came to a head with Defendants in August of 2015.[100]  This conversion claim is thus time-barred.[101]

<u>Can Ms. Biddle Prevail on Contract Claims Against Ledic or HGM?</u>

Ms. Biddle's Complaint alleges breach of contract.[102]  She claims numerous breaches: constructive eviction, wrongful eviction, failure to pay utility reimbursements, failure to return a security deposit, failure to fix the plumbing issue, failure to address an income calculation dispute, delays in responding to her hearing requests, and defective notice of hearings.

---

[98]   Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-3) at 3.

[99]   Pl.'s Compl. (Doc. 2) at 10.

[100]   *Id.* at 9.

[101]   While the conversion claim is time-barred because the tort statute of limitations applies, this does not mean that the allegations about unpaid utility reimbursements are entirely out of the case.  To the extent the unpaid utility reimbursement allegations comprise a simple breach of contract claim, that contract claim survives because of the longer statute of limitations period governing contract claims.

[102]   *Id.* at 8-9.

Defendants are correct that Ms. Biddle cannot possibly prevail on contract claims against Ledic. That is because Ledic is not a party to either of the two contracts potentially at issue in this case. It is true, as Ms. Biddle argues, that Ledic was authorized to manage LRHA's property.[103] It is also true that, in the 2016 eviction proceeding, Ledic made clear that it was an agent for HGM.[104] But none of that makes a difference here. The Arkansas Supreme Court has held that "Arkansas recognizes the general rule that where an agent names his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally liable upon the contract unless the agent agrees to be."[105] This is true even if a Ledic employee signed the leases. Ms. Biddle simply cannot prevail against Ledic on contract claims that arise from a contract to which Ledic is not a party.

Ms. Biddle argues that there remains a question of fact regarding "whether Ledic was an intended third-party beneficiary to the agreement between" Ms. Biddle and HGM or Ms. Biddle and LRHA.[106] But the third-party beneficiary rule would not help Ms. Biddle here. That rule, under certain circumstances, allows a third-party beneficiary of a contract to sue one of the contracting parties for a breach of contract that negatively impacts the third-party beneficiary.[107] The rule is a limited exception to the general and venerable principle that only the actual contracting parties can sue and be sued for breach of a particular contract.[108] In short, the third-party beneficiary rule does not expose third-party beneficiaries to contract liability on a contract

---

[103] Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-1) ¶ 2; Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1) at 2.

[104] Ex. A to Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. 33-1) at 2.

[105] *McCullough v. Johnson*, 307 Ark. 9, 11, 816 S.W.2d 886, 887 (1991).

[106] Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28) at 3.

[107] *See Perry v. Baptist Health*, 358 Ark. 238, 244-45, 189 S.W.3d 54, 58 (2004) ("In Arkansas, a party may recover for damages from breach of contract when that party is a third-party beneficiary to the contract.").

[108] *See, e.g., Gold'n Pump Poultry, Inc. v. Simmons Engineering Co.*, 805 F.2d 1312, 1318 (8th Cir. 1986) ("Under general contract (non-U.C.C.) law, a plaintiff must show privity of contract with a defendant to have a right of enforcement.").

to which they are not a party.  Ms. Biddle has provided no caselaw to support her novel interpretation of the third-party beneficiary rule.  And the Court has found none.

HGM is a different story.  It is a party to one of the contracts.  For purposes of this early Summary Judgment Motion, contract claims against HGM survive to the extent they arise specifically from an alleged breach of the contract between HGM and Ms. Biddle.  On the other hand, contract claims against HGM do not survive to the extent they arise from an alleged breach of contract between LRHA and Ms. Biddle.

Ms. Biddle's claim of breach by way of a failure to return the security deposit survives for now because the contract between HGM and Ms. Biddle requires the return of the security deposit under certain circumstances.[109]  Ms. Biddle's claims of breach by way of a failure to pay her a required utility reimbursement also chins the bar to proceed at this early stage; this is because there is a lease provision in the agreement between HGM and Ms. Biddle governing utility payments.[110]  However, most of the specific breaches of contract that Ms. Biddle alleged stem from her agreement with LRHA and not the agreement she signed with HGM.  In her Complaint, she focused on the "[t]he residential lease agreement *authored by the Little Rock Housing Authority*."[111]  She quoted excerpts from the following sections: "Section VIII – PHA's Obligation," "Section X Defects Hazardous [t]o Life Health [a]nd Safety," "Section XII Entry of Premises During Tenancy," "Section XIII [N]otice [P]rocedures," "Section XIV – Termination [o]f [t]he [L]ease."[112]  Ms. Biddle alleged that she sent to Defendants a "notice of strict performance under the lease" on March 27, 2015.[113]  But, she said, "the defendants continued to

---

[109]   Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2) ¶ 21.

[110]   *Id.* ¶ 7.

[111]   Pl.'s Compl. (Doc. 2) at 8 (emphasis added).

[112]   *Id.* at 8-9.

[113]   *Id.* at 9.

violate the lease by not providing adequate notice of entry to the plaintiff, refusing to fix the plumbing issues, refus[ing] to address the income calculation dispute, leaving notices in the exterior door of the residence, [and having] serious delays in responding to her hearing requests, etc."[114]

Ms. Biddle alleged the following violations of the lease agreement: failure to provide adequate notice of entry, refusal to fix plumbing issues, "refusal to address the income calculation dispute, leaving notices in the exterior door of the residence, [and] serious delays in responding to her hearing requests, etc."[115]  The Lease Agreement between Ms. Biddle and LRHA contains a notice provision requiring LRHA to give Ms. Biddle written notice of "at least 48 hours" of LRHA's intent to enter the apartment.[116]  The lease agreement Ms. Biddle had with HGM does not contain a similar notice requirement.  The LRHA agreement contains a provision regarding its obligation "[t]o maintain in good and safe working order and condition . . . plumbing, sanitary . . . and other facilities and appliances . . . ."[117]  The HGM agreement contains no similar provision.[118]  Regarding the "refusal to address the income calculation dispute,"[119] the LRHA agreement provides a grievance hearing process concerning lease termination[120] while the HGM agreement does not address this issue.  The same is true regarding Ms. Biddle's allegation of delays in

---

[114]  *Id.*

[115]  *Id.*

[116]  Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-3) at 8.

[117]  *Id.* at 5.

[118]  To the extent that the HGM agreement addresses plumbing issues, it states, that the tenant "assumes the sole and entire risk of any damage whatsoever to any of the Resident's property" and that "[t]he Resident further agrees not to hold the Landlord liable for any stoppage of, or damage from sewer, water, or drain pipes by reason of obstructions, freezing, or other causes . . . ."  Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-2) at 2. The HGM agreement further states that, "the Resident shall keep said premises and all contents therein . . . in good condition . . . ."  *Id.* at 3.

[119]  Pl.'s Compl. (Doc. 2) at 9.

[120]  Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 28-3) at 9-10.

response to hearing requests—grievance hearings are discussed in the LRHA agreement[121] and not mentioned in the HGM agreement.  The LRHA lease provides for notice procedures, requiring them to be in writing and delivered to the resident "or to any adult member of the household," or mailed by first-class mail to the resident.[122]

Ms. Biddle cannot sue HGM for breaches of the LRHA agreement.  HGM is not a party to that contract.

<u>Warranty of Habitability</u>

Ms. Biddle alleges in her Complaint that her apartment experienced "plumbing issues" and a level of Cladosporium that "rose to the level as unhabitable and a substantial defect."[123] Defendants' Motion for Summary Judgement argues that, "[a]s a matter of Arkansas law, there is no implied warranty of habitability in a landlord-tenant relationship."[124]  Defendants' brief supporting its Motion mentioned in passing the warranty of habitability, but did not explain or support its argument in any serious way.  Because the lack of an implied warranty of habitability was not clearly argued in Defendants' brief, Ms. Biddle provided no response on this point in her Response Brief.  And Defendants' Reply did not mention the warranty of habitability argument.

It does appear to be black-letter law in Arkansas that there is no implied warranty of habitability.  However, issues like this one still need to be raised and briefed in the proper manner to ensure adversarial testing.[125]  The Court concludes that this issue was not raised and developed

---

121  *Id.*

122  *Id.* at 9.

123  Pl.'s Compl. (Doc. 2) at 3-4.

124  Defs.' Mot. for Summ. J. (Doc. 17) ¶ 2.

125  *Nelson v. Norris*, 618 F.3d 886, 893 (8th Cir. 2010) (stating the necessity for offering support for claims in order for them to be considered properly raised, though ultimately not deciding the issue of whether a party properly raised an argument); *see also United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) ("[A]mong other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and 'any relevant . . . [c]ircuit cases.'") (quoting *United States v. Skilling*, 554 F.3d 529, 568 n. 63 (5th Cir. 2009)).

properly enough to warrant summary judgment at this early juncture.  So, the Court DENIES summary judgment on this claim.  The denial is without prejudice to the issue being raised again, even by Ledic or HGM.  Defendants are free to raise the same argument in a later motion after discovery closes.

### Conclusion

Ledic and HGM's Motion for Summary Judgment is GRANTED in part and DENIED in part.  All the claims against Ledic are out except for the implied warranty of habitability claim. All the claims against HGM are out except for the breach of contract claims about the security deposit and the utility reimbursements, and the breach of the implied warranty of habitability claim.  LRHA was not involved in this summary judgment motion, so at present all claims against LRHA also proceed.

IT IS SO ORDERED this 16th day of March 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE